Exhibit "A"

## SETTLEMENT AGREEMENT AND GENERAL RELEASE

This Settlement Agreement and General Release ("Agreement") is hereby entered into by Chrysten Wright ("Wright"), Kurel Scott ("Scott), Ongeli McMillan ("McMillan"), Whitley Middleton ("Middleton"), Jenair Perry ("Perry"), Shomari Davis ("Davis"), Millan Rodrigo ("Rodrigo"), Demarquis Denson ("Denson") and Cashara Tate ("Tate") (collectively referred to as "Plaintiffs") and Clifford Joseph Harris, Jr. and Clifford Joseph Harris, Jr. d/b/a the Royal Group LLC ("hereinafter referred to as "Harris" or "Defendant") (Plaintiffs and Defendant collectively referred to herein as "Parties" or individually as a "Party") on this 11th day of June, 2018 ("Effective Date"), as follows:

### RECITALS

**WHEREAS**, Plaintiffs filed a civil action in the United States District Court for the Northern District of Georgia, civil action number 1:16-cv-02425-LMM ("Lawsuit"), assertions violations of the Fair Labor Standards Act and other claims.

**WHEREAS**, Harris denies any and all liability or wrongdoing in connection with the Lawsuit, and enters into this Agreement to resolve the Lawsuit as a compromise and to lessen the continued burden and expense of continued litigation.

**WHEREAS**, the Parties have negotiated and reached an agreement whereby Harris will remit a payment in exchange for a general release of claims and limited confidentiality specifically related thereto.

**NOW, THEREFORE**, in consideration of the foregoing recitals and the mutual terms, covenants, and conditions hereinafter set forth, the Parties agree as follows:

**1.    Settlement Amount**.  Subject to the terms and conditions as provided herein, and subject to the necessary approval by the Court having jurisdiction over the Lawsuit, Harris shall pay to Plaintiffs and their attorneys the gross sum of One Hundred Thousand Dollars and 00/100 ($100,000.00) (the "Settlement Amount").  The Settlement Amount shall be paid not later than 45 days after the approval of this Agreement by the United States District Court having jurisdiction over the Lawsuit.  The amount shall be remitted to Plaintiffs' counsel and made payable to Michael Mondy, PC. Plaintiffs' counsel shall be responsible for distribution of the proceeds to each Plaintiff as follows:
.
a.    Wright shall be paid $8,333.33
b.    Scott shall be paid $8,333.33
c.    McMillan shall be paid $8,333.33
d.    Middleton shall be paid $8,333.33
e.    Perry shall be paid $8,333.33
f.    Davis shall be paid $8,333.33

     g.     Rodrigo shall be paid $8,333.33
     h.     Denson shall be paid $8,333.33
     i.     Tate shall be paid $8,333.33
     j.     Plaintiffs' attorneys shall be paid $25,000.00

Plaintiffs understand and agree that the Settlement Amount payments reflected above are provided solely in exchange for Plaintiffs' execution of this Agreement and the releases and terms contained herein, and that Plaintiffs are not entitled to any such consideration without executing this Agreement and this Agreement being effectuated in accordance with its terms and approved by the Court. Upon receipt of the settlement payment referenced herein, Plaintiffs agree that Harris has no further liability or debt owing to Plaintiffs whatsoever for any reason as this is a complete and final settlement of all possible claims, direct or indirect, whether known or unknown, against Harris in any capacity.

Upon delivery of the Settlement amounts to Plaintiffs' counsel and receipt of such by Plaintiffs' counsel, Harris's payment obligations hereunder shall be met.

**2.**     **Tax Liability.**     In paying the Settlement Amount specified in Section 1, Harris makes no representation regarding the tax consequences or liability arising from said payments. Each Plaintiff understands and agrees that any and all tax liability that may be due or become due because of the payments referenced above is each Plaintiff's sole responsibility, and that each Plaintiff will pay any such taxes that may be due or become due. Each Plaintiff agrees to bear all tax consequences, if any, attendant upon the payment to each Plaintiff of the Settlement Amount. Each Plaintiff further agrees to hold Harris harmless from and against all tax or tax withholding claims, amounts, interest, penalties, fines or assessments by any taxing authority or governmental agency with regard to the Settlement Amount. In the event Harris receives written notice that any claim or assessments for taxes, withholding obligations, penalties and/or interest arising out of this settlement are being or will be made against Harris, Harris shall promptly, after receipt of such written notice, notify the applicable Plaintiff by letter sent to counsel for Plaintiffs.

**3.**     **General Release of Harris by Plaintiffs.**  In consideration of the amounts paid hereunder, described in Section 1 of this Agreement, each Plaintiff (for himself, his or her agents, assigns, heirs, executors, and administrators) releases and discharges Harris (including any officers, owners, principals, members, employees, agents, representatives, attorneys, or officers) from any and all charges, complaints, claims, liabilities, obligations, promises, agreements, controversies, damages, actions, causes of action, suits, rights, demands, costs, losses, debts, and expenses (including attorney fees and costs actually incurred), of any nature whatsoever, known or unknown, in law or equity which arose at any time from the beginning of time to the Effective Date. Without limiting the foregoing general release, each Plaintiff understands that this general release applies, but is not limited, to: all claims arising out of each Plaintiff's employment with Scales 925 Atlanta, LLC including the compensation or benefits payable in connection with that employment or the cessation of that employment and/or any other interaction with Harris, including, without limitation, (a) Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C.

§ 2000(e), *et seq.*; (b) The Americans With Disabilities Act of 1990, as amended, 42 U.S.C. § 12101*et seq.*; (c) The Equal Pay Act, as amended, 29 U.S.C. § 206, *et seq.*; (d) The Lilly Ledbetter Fair Pay Act of 2009; (e) The Family and Medical Leave Act of 1993, as amended, 29 U.S.C. § 2601, *et seq.*; (f) The National Labor Relations Act, 29 U.S.C. § 151, *et seq.*; (g) The Employee Retirement Income Security Act, as amended, 29 U.S.C. § 1001 *et seq.*; (h) The Fair Credit Reporting Act, as amended, 15 U.S.C. § 1681 *et seq.*; (i) The Civil Rights Act of 1866, 42 U.S.C. § 1981 *et seq.*; (j) The Fair Labor Standards Act, as amended, 29 U.S.C. § 201, *et seq.* (the "FLSA"); (k) The Occupational Safety and Health Act, as amended, 29 U.S.C. § 651, *et seq.* (l) any agreement, representation, promise, understanding, policy, practice, plan, or potential entitlement (regardless of the source); (m) past or future wages, severance, compensation, vacation pay, holiday pay, meal or rest breaks, overtime, benefits, bonuses, commissions, fringe benefits, reimbursement of expenses, or other forms of consideration, payment, or remuneration, except for claims to enforce payment of those sums explicitly identified in Section 3; (n) breach of contract; (o) intentional and/or negligent infliction of emotional distress; and (p) any other federal, state, or local law, whether arising or emanating from statute, executive order, regulation, code, common law, or other source, including, but not limited to, all actions sounding in tort, contract, and/or any doctrine of good faith and fair dealing, and such release shall preclude recovery against Harris directly or indirectly.

Each Plaintiff further waives any and all rights to participate in a class or collective action alleging violations of any of the above laws, including those brought under the FLSA, and each Plaintiff further covenants and agrees not to accept, recover or receive any back pay, front pay, liquidated damages, other damages or any form of relief based upon any claims that have been asserted or could have been asserted or settled in a lawsuit that may arise out of, or in connection with, any other individual, class or administrative remedies pursued by any state or local governmental agency against Harris.

This Agreement shall not apply to any provision of this Agreement that may be interpreted to waive, release, or extinguish any rights that, by express and unequivocal terms of law, may not under any circumstances be waived, released, or extinguished, including any other claim which cannot be released by private agreement.

**4.     Non-disparagement.**  Each Party agrees not to make any oral or written statements or reveal any information to any person about the other Party which disparages or damages the other Party's reputation or business and shall restrict public comments about this matter to a statement that the parties were able to reach an amicable compromise of their disputes.

**5.     Representations, Warranties and Affirmations.**  Each Plaintiff represents, warrants and affirms that other than the Lawsuit, each Plaintiff has no suits, claims, charges, complaints or demands of any kind whatsoever currently pending against Harris with any local, state, or federal court or any governmental, administrative, investigative, civil rights or other agency or board.  Each Plaintiff represents, affirms and warrants that each Plaintiff has not filed

any charge, complaint or action against Harris with OSHA, the EEOC, the NLRB or any other Federal, State or local agency or board.

      **6.**      **Disclaimer of Liability.**  The Plaintiffs understand that Harris wholly denies the allegations made by Plaintiffs during the persecution of the Lawsuit, and that nothing contained herein shall be deemed to be an admission by Harris or establishment of any obligation, liability, or other fact or circumstance concerning the subject matter of the Lawsuit, whether generally or specifically.  In the event this Agreement is not effectuated in accordance with its terms in all respects, the settlement shall be null and void and any order entered by any Court in furtherance of this settlement shall be treated as void *ab initio*.  In such case, this Agreement, all negotiations, Court orders, and proceedings relating thereto, and all evidence or material relating to the settlement and all negotiations shall not be admissible against Harris in any action or proceeding, in any other litigation, or otherwise and any funds paid under this Agreement shall be returned to Harris.

      **7.**      **Remedies for Breach.**  Should any Parties prevail in any action brought against the other to enforce the terms of this Agreement, or to recover damages for breach of this Agreement, or to collect the Settlement Amount to be paid by Harris under this Agreement, the prevailing Party shall be entitled to recover from the other his or its reasonable attorneys' fees incurred in the action, along with costs and damages.

      **8.**      **Integration**.  This Agreement contains the entire agreement of the Parties regarding the settlement of Plaintiffs' claims against Harris.  This Agreement may not be changed orally but only by an agreement in writing signed by the Party against whom enforcement of any waiver, change, modification, extension, or discharge is sought.  The Parties acknowledge that each Party has not relied upon any representations or promises except as set forth herein and has not relied upon the other Party or its counsel for any advice on or interpretation of the legal or tax implications of this Agreement.  By signing below, the Parties acknowledge receipt of a copy of this Agreement.  Each Party has been advised to seek the advice of a Certified Public Accountant or other tax advisor to insure and review the Agreement and to advise each Party concerning how all of the terms and conditions set forth therein may affect their future tax liabilities.  The Parties hereto hereby acknowledge and agree that each has had the opportunity to retain its, his or her own Certified Public Accountants, tax advisor or tax attorney with reference to the tax implications of this Agreement.  Further, the Parties hereby acknowledge that they have not relied upon the tax implications of this Agreement.  Further, the Parties acknowledge and agree that their signatures to this Agreement serve as the acknowledgment that they have read this particular paragraph and that they have had the opportunity to seek independent advice.  All Parties acknowledge that its, his or her attorney provided them no tax advice and they have not relied on any representations of their lawyer in providing tax advice.

      **9.**      **Governing Law.**  This Agreement shall be interpreted and enforced in accordance with the laws of the State of Georgia.

**10. Construction of Agreement.** The Parties hereby confirm and agree that this Agreement is the result of negotiation and compromise and that in interpreting this Agreement neither party shall be considered to be the drafter of the document, and that the language should not be strictly construed against either party. Instead, the language of the Agreement should be interpreted in a manner consistent with the ordinary and reasonable meaning of the words used.

**11. Binding Agreement.** The Parties agree that they have reached a full and final settlement of all claims. This Agreement contains the material terms of the Agreement between the Parties and is enforceable under applicable law. This Agreement is admissible pursuant to applicable law in an action to enforce the settlement. This Agreement shall be binding upon and inure to the benefit of the Parties and their respective heirs, executors, administrators, officers, directors, shareholders, employees, agents, parent companies, subsidiaries, divisions, affiliates, related companies, successors, and assigns.

**12. Expenses.** The Parties shall pay their own expenses, including, without limitation, any attorney fees, mediation fees, court costs, pleading preparation, legal and expert fees, or other expenses incurred for the negotiation, preparation, and execution of this Agreement, with the exception of the payment of the Settlement Amount by Harris to Plaintiffs and their counsel referenced in Section 1.

**13. Counterparts.** This Agreement may be executed in identical counterparts, each of which shall constitute an original of this Agreement. Signatures of the Parties may be exchanged by facsimile or electronically (e.g. pdf) and same shall be treated as an original.

**14. Understanding and Voluntariness.** EACH PARTY REPRESENTS AND AGREES THAT THE PARTY HAS DISCUSSED ALL ASPECTS OF THIS AGREEMENT WITH THE PARTY'S COUNSEL, THE PARTY HAS CAREFULLY READ AND FULLY UNDERSTANDS ALL OF THE PROVISIONS OF THIS AGREEMENT, AND THAT THE PARTY IS VOLUNTARILY ENTERING INTO THIS AGREEMENT.

**IN WITNESS WHEREOF**, the Parties hereto have caused this Agreement to be executed by their duly authorized representatives, and have executed and delivered this Agreement, as an agreement under seal, effective as of the Effective Date.

The undersigned attorneys have authority to sign this Agreement on their clients' behalf pursuant to O.C.G.A. § 15-19-5. The electronic signatures below shall have full effect as if the signatures were in writing pursuant to O.C.G.A. § 10-12-7.

| **Counsel for Plaintiffs:** | **Counsel for Clifford Joseph Harris, Jr. Individually and d/b/a The Royal Group:** |
|---|---|
| /s/Michael O. Mondy<br>Michael O. Mondy<br>Georgia Bar No. 897950 | /s/Albert A. Chapar, Jr.<br>Albert A. Chapar, Jr.<br>Georgia Bar No. 120940 |
| Michael O. Mondy, Esq.<br>Michael O. Mondy, P.C.<br>235 Peachtree Street, N.E., Suite 400<br>Atlanta, Georgia 30303<br>mondy@mondypc.com | Albert A. Chapar, Jr., Esq.<br>THE CHAPAR FIRM, LLC<br>917 Railroad Street, N.E.<br>Conyers, GA 30012<br>achapar@chaparlaw.com |